IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 25-CR-10037-RGS-JCB |
| | ) | |
| DAVID SMERLING, | ) | |
| | ) | |
| Defendant | ) | |

## MOTION FOR REVOCATION OF ORDER OF RELEASE

Pursuant to 18 U.S.C. § 3148, the United States respectfully requests that the Court revoke its order releasing defendant David Smerling and detain him pending trial. There is probable cause to believe that Smerling has committed a federal, state, or local crime while on release, including larceny by embezzlement, in violation of M.G.L. ch. 266, § 30, wire fraud, in violation of 18 U.S.C. § 1343, and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Additionally, there is clear and convincing evidence Smerling violated the condition of his release that he refrain from engaging in an occupation, business or profession that would provide him access to other's monetary accounts or financial information. Specifically, the government has learned that, during the two weeks in which Smerling was to transition his financial power of attorney for his wife's relative ("Victim C") to someone else, he embezzled substantial sums from her accounts and remains the power of attorney with control of her financial accounts, and additionally remains the trustee of a trust set up for the benefit of a fourth victim ("Victim D"). Because there is no condition or combination of conditions of release that will assure that Smerling will not pose a danger to the safety of any other person or the community, and because Smerling has shown that he is unlikely to abide by any condition or combination of conditions of release, the Court should enter an order of revocation and detention and such further relief as the Court deems necessary.

## BACKGROUND

### Initial Appearance & Conditions of Release

On January 14, 2025, Smerling was arrested pursuant to a criminal complaint charging him with wire fraud, in violation of 18 U.S.C. § 1343, and brought before the Court for his initial appearance. Dkts. 2, 5, 7. The complaint affidavit alleged that Smerling was hired to oversee the bookkeeping for the entities identified as Companies 1, 2, and 3, as well as the personal accounts of Victims A and B. Dkt. 2-2. The complaint affidavit further alleged that, in connection with this role, Smerling embezzled more than $2.5 million from the Companies, including by making unauthorized transfers from the Companies' accounts to accounts he controlled, including an account in the name of Victim B that Smerling controlled, and by using the Companies' funds to pay for personal expenses. *Id.*

At the initial appearance, the Court released Smerling on conditions, including that he not "violate federal, state, or local law while on release," and that he "not engage in an occupation, business or profession that would provide [him] access to other's monetary accounts or financial information." Dkt. 8. At the initial appearance, the government specifically raised the concern that Smerling was the financial power of attorney for the accounts of Victim C, a relative of his wife who has dementia. Dkt. 36 at 6:4-7:5. After conferring with Smerling, his counsel requested two weeks to transition the financial power of attorney for Victim C to someone else. *Id.* at 8:16-20. The Court thus gave Smerling two weeks "to transition financial management of relative"—that is, Victim C—"to another person" and emphasized that, as to Smerling's relationship with Victim C, "the only restriction here would be that Mr. Smerling couldn't have access to that person's finances." Dkt. 8; Dkt. 36 at 8:4-6. In reviewing his conditions of release with him, the Court reiterated, "as we discussed, you're not to engage in any occupation, business or profession that

would provide you access to another's monetary accounts or financial information, and that also

applies to your caretaking responsibilities, but I'm going to give you two weeks to transition those

responsibilities to someone else." Dkt. 36 at 10:13-18. When the Court inquired whether Smerling

understood these conditions, he replied, "I do." *Id.* at 10:20-21. Further, when reviewing the

statutory conditions of release, the Court emphasized:

> The violation of any condition of release may result in the immediate
> issuance of a warrant for your arrest, a revocation of release, an order of detention,
> and a prosecution for contempt of court. A violation could result in a term of
> imprisonment, a fine, or both.
> You are prohibited from committing a federal, state, or local crime while on
> release. The commission of a crime while on pretrial release may result in a term
> of imprisonment, a fine, or both.
> You could face more severe punishment than you would receive for
> committing the same crime at any other time. And any sentence would be in
> addition to any other sentence which may be imposed if you are convicted of the
> crime with which you have been charged.

*Id.* at 11:1-14. When the Court asked Smerling if he understood, Smerling again replied,

"I do." *Id.* at 12:7-8.

### *Arraignment & Motion to Travel*

Smerling was subsequently indicted on three counts of wire fraud, in violation of

18 U.S.C. § 1343, and two counts of money laundering, in violation of 18 U.S.C.

§ 1956(a)(1)(B)(i), related to the conduct described in the complaint. Dkt. 16. On February

5, 2025, the Court arraigned Smerling on the indictment and also held a hearing on his

motion to travel to Mexico for a family vacation. *See generally* Dkt. 28. At that hearing,

the government stated that it was "investigating whether he [Smerling] embezzled from his

wife's cousin [Victim C] last summer who has dementia and he was power of attorney for

her accounts." *Id.* at 9:18-23. The government also proffered evidence suggesting that

Smerling may have attempted to pay for his Mexico trip by withdrawing funds from Victim

C's investment account at Raymond James Financial. *Id.* at 11:14-21. In response, counsel for Smerling called the Court's attention to a letter from Smerling's wife stating that "she paid for the trip with her money that she earned as a preschool teacher" and "I have been reassured by the family that all the funds for this trip came from their own work." *Id.* at 13:1-13; *see also* Dkt. 19-2 at 3 (Letter from Abbe Smerling ("Our tickets were bought last June and accommodations were prepaid in August.")). Indeed, in his own letter to the Court, Smerling stated that his "share of the vacation costs are covered by my wife from her independent earnings at several part time jobs." Dkt. 19-2 at 2. The Court denied Smerling's motion to travel. Dkt. 28 at 13:15-14:11; *see also* Dkt. 22.

### PROBABLE CAUSE TO BELIEVE THAT SMERLING COMMITTED CRIMES WHILE ON RELEASE AND VIOLATED HIS CONDITIONS OF RELEASE

In the course of its investigation into potential embezzlement from Victim C, the government has recently learned that, during the two weeks in which Smerling was to transition his financial power of attorney for Victim C to someone else, he embezzled substantial sums from her accounts and has remained the power of attorney on her financial accounts.

As detailed in the Affidavit of Special Agent Gregory Gerber filed herewith, recently obtained financial records show that on or about January 23, 2025—a week after Smerling's arrest and initial appearance—Smerling transferred $23,360 from Victim C's investment account at Raymond James Financial to Victim C's checking account at the Institution for Savings. Gerber Aff. ¶ 11. Between January 23, 2025 and January 27, 2025, Smerling transferred approximately $20,000 from Victim C's checking account to accounts in Smerling's name at Santander Bank and Enterprise Bank. *Id.* ¶ 12. Following these transactions, Smerling either transferred a corresponding amount to an account in the name of his wife at Citizens Bank or purchased official bank checks which were deposited into the Citizens Bank account in the name of his wife. *Id.* ¶ 13.

4

Smerling and his wife appear to pay for their living expenses from this Citizens Bank account. *Id.* ¶ 13. Indeed, in just the two weeks following his arrest and release on conditions, Smerling transferred approximately $29,000 from Victim C's accounts to accounts he controlled. *Id.* ¶ 16. This amount was in excess of Victim C's routine expenses, such as a home health aide, insurance, and utilities, which Smerling paid directly from Victim C's accounts. *Id.* ¶ 17. The government has also recently obtained evidence that Smerling continued to act as the power of attorney on Victim C's accounts through at least mid-March 2025. *Id.* ¶ 20.

Additionally, records recently obtained from American Express show that between on or about June 19 and 22, 2024, Victim C's credit card with an account number ending in 3002 was used to book flights from Boston to Mexico for Smerling and to pay a nearly $1,000 deposit for a timeshare in Mexico. Gerber Aff. ¶ 19 n.5. Notably, these charges correspond to the confirmation emails submitted in connection with Smerling's motion to travel. Dkt. 19-1 at 2-5. Smerling used funds from Victim C's checking account to pay for these credit card charges, Gerber Aff. ¶ 19 n.5, despite that the charges were for Smerling to fly to and vacation in Mexico, and despite that Smerling and his wife represented to the Court that Smerling's wife paid for the trip from her own earnings.

The government has also recently learned that, between in or about May 2020 and in or about August 2021, Smerling embezzled at least $470,000 from a trust set up to benefit Victim D, a relative of Smerling's wife who has special needs. Gerber Aff. ¶¶ 21-30. According to Victim D, Smerling is still the trustee of this trust. *Id.* ¶ 32.

The government has also recently obtained evidence that, following his arrest in this case, Smerling has continued to send money to women to whom he sent thousands of dollars for nearly a decade. Gerber Aff. ¶ 28.

## **LEGAL STANDARD**

An individual who violates his conditions of release "is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Contempt is governed by 18 U.S.C. § 401, and revocation and detention are governed by 18 U.S.C. § 3148(b). Pursuant to 18 U.S.C. § 3148(b)(1)-(2), the Court "shall enter an order of revocation and detention" if the Court finds:

> (1)(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and

> (2)(A) . . . based on the factors set forth in section 3142(g) . . . there is no condition or combination of conditions of release that will assure that the person will not . . . pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

If there is "probable cause" to believe that a person committed a crime while on release, this creates a "rebuttable presumption" that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. *Id.* Therefore, "[a]n affirmative finding on the first prong helps lead to an affirmative finding on the second prong." *United States v. Alfonso*, 284 F. Supp. 2d 193, 202 (D. Mass. 2003) (Young, J.).

Importantly here, safety of the community includes the risk that a defendant will commit further financial crimes. The Bail Reform Act does not limit "danger to the safety of any other person or the community" to violent crimes. *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) ("The concern about safety is to be given a broader construction than the mere danger of physical violence."). To the contrary, the legislative history makes clear that Congress intended "safety of the community" be given "broad construction," encompassing "the danger that the defendant might engage in criminal activity to the detriment of the community." S. Rep. No. 225,

6

98th Cong., 1st Sess. 12 (1983).[1] Courts have consistently construed protection of the community to include protection from "pecuniary or economic harm." *United States v. Carpenter*, 2014 WL 2178020, at *4 (D. Mass. May 23, 2014) (O'Toole, J.). (defendant indicted for wire and mail fraud posed a danger to the safety of the community because he was recently accused of similar offenses in another state); *see also United States v. Garcia-Oquendo*, No. 25-cr-00041, 2025 WL 756456, at *5 (D.P.R. Mar. 10, 2025) ("In light of his ongoing penchant for fraud and misappropriation of other person's identities, I also find that the Government has met its burden to show by clear and convincing evidence that there are no conditions that would reasonably assure the safety of the community if Garcia-Oquendo were to be released."); *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) (holding that "[a] danger to the community does not only include physical harm or violent behavior" and citing the Senate Committee Report language); *United States v. Persaud*, No. 05-cr-00368, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (concurring with a Magistrate Judge's finding that "economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); *United States v. Gentry*, 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006) (in a fraud and money laundering case, holding that danger to the community "may be assessed in terms other than the use of force or violence . . . [including] economic danger to the community"); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) ("There can be no question that an economic danger, like that posed by a serious defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act.").

---

[1] This topic is discussed in the legislative history of the Bail Reform Act of 1984. S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983) ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.")

## SMERLING CANNOT OVERCOME THE REBUTTABLE PRESUMPTION

Smerling's recent criminal conduct creates a "rebuttable presumption" that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community. 18 U.S.C. § 3148(b); *see also Alfonso*, 284 F.Supp.2d at 202 (considering 18 U.S.C. § 3148(b)(1)-(2) and finding "[a]n affirmative finding on the first prong helps lead to an affirmative finding on the second prong").

The indictment charges Smerling with embezzling more than $2.5 million by misusing his control over his employer's bank accounts. There is probable cause to believe that Smerling has done the same with Victim C's financial accounts and the trust set up for the benefit of Victim D, and that Smerling continued to embezzle from Victim C even after he was arrested and released on conditions. There is also clear and convincing evidence that Smerling violated his condition of release not to engage in an occupation, business, or profession that would provide him access to other's monetary accounts or financial information when he continued to act as Victim C's power of attorney through at least March 10, 2025 and remains the trustee of Victim D's trust as of at least April 30, 2025.

By continuing to steal from Victim C and ignoring the Court's order, Smerling leaves no reason to believe that any conditions of release would prevent him from continuing to steal from Victim C or any other source if he were to remain released while awaiting trial and/or sentencing. That Smerling lied to the Court regarding the source of funds for his Mexico trip further demonstrates that he does not take this matter seriously and may continue to flout the Court's orders. Further, Smerling continues to send money to various women around the country despite his arrest and lack of personal financial resources, showing that he cannot stop himself from satisfying this urge to send these women money and will steal to do so.

**CONCLUSION**

For the reasons stated above, the Court should find that there is probable cause to believe that Smerling committed a federal, state or local crime while on release and violated his conditions of release; that there is no condition or combination of conditions that will assure that he will not pose a danger to the safety of any other person or the community; and that he is unlikely to abide by any conditions that the Court might establish. The Court should accordingly enter an order of revocation and detention.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Kristen A. Kearney*
Kristen A. Kearney
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: May 8, 2025

*/s/ Kristen A. Kearney*
Assistant United States Attorney

**LOCAL RULE 7.1 CERTIFICATION**

I certify that I have conferred with Eliza Jimenez, counsel for defendant David Smerling, and Attorney Jimenez opposes this motion.

Dated: May 8, 2025

*/s/ Kristen A. Kearney*
Assistant United States Attorney