**AFFIDAVIT**

I, GREGORY M. GERBER, affirm as follows:

***INTRODUCTION AND AGENT BACKGROUND***

1.        I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since February 2023. I am currently assigned to the FBI's Boston Field Office and to that office's Corporate and Securities Fraud group. My duties include the investigation of investment fraud, money laundering, mail fraud, wire fraud, and other financial crimes. I received training at the FBI Academy in Quantico, Virginia in a variety of investigative and legal matters. I hold a Bachelor of Science degree in Accounting.

2.        I have investigated DAVID SMERLING ("SMERLING") for embezzling at least $2.5 million from three companies ("the Companies") and two individuals (a married couple previously identified as "Victim A" and "Victim B") while he oversaw bookkeeping for the Companies and Victim A and Victim B's personal finances, in violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 1956(a)(1)(B)(i). More recently, I have also been investigating SMERLING for embezzling at least $600,000 from two additional victims (hereafter, "Victim C" and "Victim D"), including after his arrest in connection with his embezzlement from the Companies and Victims A and B ("the New Offenses").[1]

---

[1] The New Offenses include the federal offenses of wire fraud, in violation of Title 18, United States Code, Section 1343 and money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and the state offense of larceny by embezzlement, in violation of Mass. Gen. Laws ch. 266, § 30 ("[W]hoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another . . . , whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny . . . .").

3.      I make this affidavit in support of the government's request that the Court, under 18 U.S.C. § 3148, revoke its order releasing SMERLING and detain him pending trial.

4.      Based on the facts as set forth in this affidavit, there is probable cause to believe that SMERLING has committed the New Offenses while on pretrial release and under the supervision of this Court and the U.S. Probation Office.

5.      The facts in this affidavit are based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, information provided by witnesses, and my review of records described below. This affidavit is not intended to set forth all of the information that I have learned during this investigation and includes only the information necessary to establish probable cause that SMERLING committed the New Offenses while on pretrial release.

### *PROBABLE CAUSE TO BELIEVE SMERLING*
### *COMMITTED THE NEW OFFENSES WHILE ON PRETRIAL RELEASE*

6.      On January 14, 2025, SMERLING was arrested pursuant to a criminal complaint charging him with wire fraud, in violation of Title 18, United States Code, Section 1343. Following his initial appearance, SMERLING was released on conditions, including that he not "violate federal, state, or local law while on release," and that he "not engage in an occupation, business or profession that would provide [him] access to other's monetary accounts or financial information." On January 30, 2025, a grand jury sitting in Boston returned an indictment charging SMERLING with three counts of wire fraud, in violation of Title 18, United States Code, Section 1343, and two counts of money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), related to his embezzlement from the Companies and Victims A and B.

**Embezzlement from Victim C**

7.    Victim C is 79 years old and lives in Massachusetts. Victim C is a relative of SMERLING's wife and has dementia.

8.    On or about September 21, 2021, Victim C named SMERLING as her financial power of attorney. As power of attorney, SMERLING had a fiduciary duty to act in Victim C's best interests.

9.    In or about May 2023, SMERLING, as power of attorney, took control of (a) Victim C's investment account at Raymond James Financial, Inc. with an account number ending in 5907 ("Victim C's Investment Account"); (b) Victim C's checking account at the Institution for Savings with an account number ending in 2590 ("Victim C's Checking Account"); and (c) Victim C's savings account at the Institution for Savings with an account number ending in 4439 ("Victim C's Savings Account") (collectively, Victim C's Investment Account, Victim C's Checking Account, and Victim C's Savings Account are "Victim C's Financial Accounts").[2]

10.    Investigators recently obtained financial records which show that, between in or about October 2023 and continuing through at least in or about January 2025, SMERLING transferred money out of Victim C's Financial Accounts into (a) an account in SMERLING's name at Santander Bank with an account number ending in 2648 ("Smerling Account 1"); (b) an account in SMERLING's name at Enterprise Bank with an account number ending in 3370 ("Smerling Account 2"); and (c) an account in SMERLING's name at TD Bank with an account number ending in 4169 ("Smerling Account 3").[3] SMERLING was the sole authorized signer on Smerling

---

[2] Institution for Savings is a federally insured financial institution.

[3] Santander Bank, Enterprise Bank, and TD Bank are each federally insured financial institutions.

Account 1, Smerling Account 2, and Smerling Account 3.

11.     For example, on or about January 23, 2025—a week after SMERLING's arrest and initial appearance—SMERLING transferred approximately $23,360 from Victim C's Investment Account to Victim C's Checking Account.

12.     Over the course of the next five days, that is, between on or about January 23, 2025 and on or about January 27, 2025, SMERLING transferred approximately $20,000 from Victim C's Checking Account to Smerling Account 1 and Smerling Account 2, as follows:

| Date | Amount | To Account |
| --- | --- | --- |
| January 23, 2025 | $5,000 | Smerling Account 1 |
| January 24, 2025 | $5,000 | Smerling Account 1 |
| January 27, 2025 | $5,000 | Smerling Account 1 |
| January 27, 2025 | $5,000 | Smerling Account 2 |
| TOTAL | $20,000 | |

13.     Following each of the above transactions to Smerling Account 1, SMERLING either transferred a corresponding amount from Smerling Account 1 to an account in his wife's name at Citizens Bank with an account number ending in 8835 ("the Citizens Bank Account") or purchased official bank checks which were deposited into the Citizens Bank Account.[4] Based on my review of the Citizens Bank Account, it appears that SMERLING and his wife used the funds in this account for their living expenses.

14.     As another example, on or about January 23, 2025, SMERLING transferred $5,000 from Victim C's Checking Account to Smerling Account 1. On or about the next day, SMERLING transferred $5,000 from Smerling Account 1 to the Citizens Bank Account.

---

[4] Citizens Bank is a financially insured financial institution. Citizens Bank maintains its servers through which transactions are processed in Rhode Island.

15.    SMERLING also transferred funds from Victim C's Savings Account to accounts he controlled. For example, on or about January 22, 2025—again, after his arrest and release on conditions—SMERLING transferred $3,000 from Victim C's Savings Account to Smerling Account 1. Prior to this transfer, the balance in Smerling Account 1 was approximately $10.50. On or about the same day, that is, January 22, 2025, SMERLING transferred $3,000 from Smerling Account 1 to the Citizens Bank Account.

16.    In total, between in or about October 2023 through in or about January 2025, SMERLING transferred at least $150,000 from Victim C's financial accounts to Smerling Account 1, Smerling Account 2, and Smerling Account 3, with at least approximately $29,000 of those funds transferred after SMERLING's arrest and release on pretrial conditions.

17.    Based on my review of Victim C's financial records, it appears SMERLING paid Victim C's regular living expenses and costs for her care, such as a home health aide, insurance, and utilities, directly out of Victim C's Financial Accounts, and that this $150,000 was used for SMERLING's, not Victim C's, benefit.

18.    Further, records from Raymond James show that, in or about August 2024, SMERLING suggested to the financial advisor for Victim C's Investment Account that he would begin gifting funds from Victim C's Investment Account to SMERLING's wife, who SMERLING claimed would be Victim C's beneficiary upon Victim C's death. Raymond James records further reflect that, in or about December 2024, SMERLING sought to be compensated $1,500 per month for his services as power of attorney. In both instances, the Raymond James representative informed SMERLING that such payments were improper.

19.    Records from Raymond James also show that, beginning in or around August 2024, the firm began refusing to distribute funds to SMERLING unless SMERLING could provide

invoices or receipts to prove the funds were in fact being used for Victim C's care. Records from American Express show that, on or about December 3, 2024, SMERLING applied for and received a $15,000 loan using Victim C's name, date of birth, and Social Security number, despite that Victim C's Investment Account had a balance of more than $400,000 at the time. After the American Express loan for $15,000 was deposited into Victim C's Checking Account, SMERLING transferred $15,000 to Victim C's Savings Account. From there, SMERLING made numerous transfers to Smerling Account 1 and Smerling Account 2. The American Express records further show that SMERLING has used funds from Victim C's Checking Account to pay back the loan, including payments made on or about February 3, 2025 and on or about March 3, 2025.[5]

20.     Records from Raymond James further show that SMERLING continues to act as the power of attorney in control of Victim C's Investment Account, including in phone calls through February 2025 and an email to the Raymond James representative on or about March 10, 2025.

### Embezzlement from Victim D

21.     Victim D is 74 years old and lives in Massachusetts. Victim D is a relative of SMERLING's wife and has special needs.

22.     Records from Merrill Lynch show that, in or around October 1994, Victim D's mother opened a Special Needs Trust ("the Trust") at Merrill Lynch with Victim D as the

---

[5] Records from American Express further show that, between on or about June 19 and 22, 2024, Victim C's credit card with an account number ending in 3002 was used to book flights from Boston to Mexico for SMERLING and to pay a nearly $1,000 deposit for a timeshare in Mexico. SMERLING used funds from Victim C's Checking Account to pay for these credit card charges.

beneficiary. Following the death of Victim D's mother in 2017, SMERLING was named as the Trustee for the Trust. As Trustee, SMERLING had a fiduciary duty to act in the best interests of the Trust beneficiary—that is, Victim D.

23.     Victim D reported to investigators that he trusted SMERLING and thought of SMERLING as a brother figure and friend.

24.     According to Victim D, Victim D and SMERLING made an oral agreement that Victim D would receive $250 per month from the Trust starting in or around December 2018. Pursuant to that agreement, Victim D generally received approximately $250 per month from the Trust.

25.     Merrill Lynch records show that, in or around April 2020, the Trust had a balance of approximately $475,000.

26.     Financial records show that, between in or about May 2020—the same time SMERLING's embezzlement from the Companies and Victims A and B was discovered and his access to their bank accounts was terminated—and continuing through in or about August 2021—when the Trust was effectively depleted—SMERLING transferred money out of the Trust and into accounts in SMERLING's name with account numbers ending in 9962 ("Smerling Account 4") and 1041 ("Smerling Account 5") at Bank of America.[6]

27.     For example, between on or about September 30, 2020 and on or about October 31, 2020, SMERLING made transfers totaling approximately $92,890 from the Trust to Smerling Account 4, as follows:

| Date | Amount |
|---|---|
| September 30, 2020 | $1,000 |
| October 1, 2020 | $5,000 |

---

[6] Bank of America is a federally insured financial institution.

| | |
|---|---|
| October 1, 2020 | $5,000 |
| October 5, 2020 | $10,000 |
| October 6, 2020 | $10,800 |
| October 8, 2020 | $5,000 |
| October 8, 2020 | $5,000 |
| October 12, 2020 | $3,500 |
| October 13, 2020 | $5,500 |
| October 13, 2020 | $1,000 |
| October 14, 2020 | $5,000 |
| October 15, 2020 | $500 |
| October 16, 2020 | $11,500 |
| October 16, 2020 | $2,500 |
| October 19, 2020 | $5,000 |
| October 20, 2020 | $1,000 |
| October 20, 2020 | $1,000 |
| October 20, 2020 | $500 |
| October 22, 2020 | $500 |
| October 23, 2020 | $750 |
| October 26, 2020 | $1,840 |
| October 26, 2020 | $1,000 |
| October 27, 2020 | $10,000 |
| **TOTAL** | **$92,890** |

28.    Prior to the foregoing transfers, Smerling Account 4 had a balance of less than $3,000. Between on or about September 30, 2020 and on or about October 31, 2020, SMERLING transferred at least $60,000 from Smerling Account 4 to women around the country who appear to have no responsibility for the care of Victim D, to whom SMERLING has sent money for nearly a decade, and to whom he continues to send money, as recently as April 2025. During the September 30, 2020 to October 31, 2020 period, SMERLING also used funds transferred from the Trust to Smerling Account 4 for purchases using Google Pay and from the website OnlyFans. He additionally transferred some of the funds from the Trust to another Citizens Bank Account with an account number ending in 9110 under his wife's control. During this same period, SMERLING transferred only $250 from the Trust to Victim D.

29.    By in or around August 2021, the balance in the Trust was approximately $4,565.

30.     In total between in or about May 2020 to August 2021, SMERLING transferred at least $470,000 from the Trust to accounts in SMERLING's name at Bank of America including Smerling Account 4 and Smerling Account 5.

31.     Beginning in or around April 2023 and continuing through at least January 2025, SMERLING began making small deposits into the Trust in what looks to be an attempt to fund the Trust so Victim D could keep receiving his monthly allotment of $250 and to hide SMERLING's depletion of the Trust from Victim D.

32.     According to Victim D, he lives in Section 8 Housing and has had to rely on other people for food because his $250 monthly allotment from SMERLING has been insufficient to cover his living expenses. Victim D was aware of SMERLING's arrest but, when interviewed on April 30, 2025, Victim D believed SMERLING was still the Trustee for the Trust.

## CONCLUSION

33.     Based on the information set forth above, there is probable cause to believe that, following his arrest and release on conditions on January 14, 2025, SMERLING committed the New Offenses by embezzling at least $29,000 from Victim C by transferring funds from Victim C's Financial Accounts to accounts SMERLING controlled and, once the funds were in accounts he controlled, further transferring them on to the Citizens Bank Account or purchasing official bank checks that were then deposited into the Citizens Bank Account in an attempt to conceal the source and ownership of the funds.

*/s/ Gregor M. Gerber*
Gregory M. Gerber
Special Agent
Federal Bureau of Investigation

Dated: May 8, 2025